Mr. Petrucci, please proceed whenever you are ready. Only nine months ago, this Court affirmed the validity of the claims of this patent focused on the feature of the inflatable protrusions that made it different from the prior art, different from the Samuels A51 to the same inventor, in fact. And now, under the guise of claim construction, the District Court and the appellees seek to nullify that decision in effect by importing limitations into all of them. Am I correct from reading your stipulation that if we affirm on any of the District Court's claim constructions, you lose? That would be an accurate statement, only to the extent that, though, there seems to be some question as to the stipulation with respect to some of the elements. We were very clear we were only stipulating if, for example, the means for injecting required this movable part valve. And that was clear in the judge's decision. That's why we stipulated. The same is true on the stipulation on the inflatable cuff. The Court in footnote 9 indicated that the entire cuff had to be inflatable, and we were concerned that if the cuff had a flap or some additional feature, that somehow that would be a non-infringement. So we stipulated only to the extent that the decision seemed clear it required the entire cuff to be inflatable. As opposed to just the protrusions. Your argument is the protrusions alone could be inflated and the cuff does not have to have an inflatable chamber. Claim 1 does not reside in an inflatable chamber explicitly, so we don't believe Claim 1 requires an inflatable chamber. But it does require an inflatable cuff. It does. And so you said your argument, unless I'm mistaken because you're kind of fighting me and I'm surprised. No, you're correct. Because your argument, as I understand it, is if the protrusions on the cuff are inflatable, that satisfies the inflatable cuff element of Claim 1. Yes, and that was discussed at the last hearing on the IPR Affirmance. But throughout the patent, it repeatedly refers to inflatable protrusions and the inflatable cuff as separate elements. Well, the inflatable protrusions are part of the cuff called out by the claim. And we believe that since they are part of the cuff and they are the operative element that upon inflation would bring to life, so to speak, this cylindrical cuff, it's sufficient that if they are inflated, the cuff then is an inflatable cuff. Because they are integral to it, it's part of it, it's listed as in the first element that the cuff includes these friction enhancing outer surface featuring the inflatable protrusions. And that was the patentable feature, that there were these inflatable protrusions in the cuff. And I think, you know, turning to the way the district court construed these claims with respect to the means for injection, you know, these claims were identified as 112 paragraph 6 quite clearly. And during the IPR... Can I ask you a question about that, since you've turned to that? Yes, sir. In the red brief, TriVascular says, there can be no reasonable dispute that the valve and inflation tubing are also required structure. Nothing in the patent suggests that the valve and tubing assembly is not necessary or that inflating and injecting are done only by the inflation syringe. Tellingly, nowhere does the 575 patent describe any embodiment or inflation process that does not require a valve. Is TriVascular correct about that? I don't believe so. First, this is a structural apparatus. Tell me then where 575 discloses the inflating or injecting is done only by the inflation syringe and doesn't require a valve. Well, at column 4, lines 34 to 35, it says the cuff is inflated by way of an inflation syringe with an inflation material. And the drawings all show the inflation syringe and the tubing. During the IPR, it was identified even by TriVascular in numerous cases that the inflation this means was met by an inflation tubing and a syringe. I know it was a different standard under BRI, but it seems anomalous that you can have a standard of reasonable interpretation that has two elements, the syringe and the tubing. Then we go to a district court and under a Phillips construction, we had an entirely new term, new structure, the valve, which is specifically called out subsequently in the claim as the third element. And when you look at the dependent claims, 9 and 19, it talks about the breakaway valve being separable from the means for injecting or the means for inflation. So we think, to what order of skill in the art, which is really the touchstone of any analysis here, reading this claim, they would have read the structure of the means for element to be the tube and the syringe, and it's obviously connected to the cuff, but it doesn't require the valve to perform that function of injecting or inflating. So in our view, what order of skill in the art would clearly read this particular element to be just the syringe and the tubing. Can that breakaway valve perform a sealing function on its own? It can. The breakaway valve is the very mechanism that holds that tubing into the cuff. When you are inflating, the inflation material goes in, fills up the channels, and then it stops flowing because that seal that's formed by that breakaway valve does not allow it to go out. If you don't have that breakaway connection with a circumferential fitting, then the fluid would just flow right out. The claim term is a valve. The inventor intended to use a very broad generic term. Is the breakaway valve not part of valve 37? As disclosed in the preferred environment, it is part of that combination, no question. But the inventor clearly talked about a breakaway valve, he talked about the mitre valve, and then he claimed a valve. In fact, the dependent claims again say later where in the valve is a breakaway design or where in the valve is a mitre. So again, we think that to honor ordinary skill in the art, reading these claims that just say a valve, it wouldn't be limited by either of the other two that are mentioned in the patent. They are exemplary embodiments. Otherwise, what you have here and what we ended up with is a picture claim that is exactly what is in the patent and defeats the very purpose of the patent. First, it excludes the preferred embodiment of using a hardening fluid because you only need that breakaway valve or that seal valve to do that. And more importantly, if you read the claims, they all talk about inflatable and deflatable cuff. The patent is very clear that the function of this inflatable and deflatable cuff is to allow for repositioning of the cuff after an initial inflation. So you inject the fluid. The cuff is positioned. You look on fluoroscope and see is it in the right place. You decide it's not. You pull back on the syringe. It sort of collapses a little bit and you move it. You can't do that if you have this mitre valve which was called out by the district court or a movable flap type valve. They are by definition backflow preventers. They would not allow the fluid to come back out. The only valve that works in that context is this breakaway valve. The one that the inventor called out and called a valve. So we think not only are these constructions wrong on the patent, but like I say they defeat the very purpose of the invention. Let's go back to my inflatable cuff question if you don't mind. Claim itself says, featuring inflatable protrusions including at least one circumferential ridge disposed about the inflatable cuff. Those are two different structural elements. There are inflatable protrusions and an inflatable cuff. I don't see how any plain language reading of that could allow the protrusions to be the inflatable portion of the cuff because it actually has two structural elements and only two in that element. Inflatable protrusions disposed about an inflatable cuff. How can you say the inflatable protrusions satisfies the inflatable requirement to the cuff? It would render it entirely superfluous. Well, I understand that the inflatable protrusions are in fluid communication with other aspects of the cuff. Our concern with that element was not so much with the inflatable protrusions versus the cuff. It was that the judge required that the claim be completely inflatable or entirely inflatable. Almost like a consisting of. We did not stipulate because it said there was an inflatable chamber. We believe they do have an inflatable chamber in addition to the inflatable protrusions. The issue we had was that he construed it to be entirely inflatable. Can you show me in the stipulation where that's the case? Because I didn't understand you to say... I'm just a little confused. I want to make sure I know exactly what you're referring to. We say here that we stipulate to this particular term. Appendix where? 27. And we identify, for this very reason, because we didn't want to have this gotcha that we somehow had stipulated to non-infringement only because of this inflatable chamber issue. We say it includes an inflatable cuff... What paragraph? Oh, paragraph 13. So we identified that it must include an inflatable, must mean the entire structure is inflated as set forth in footnote two of the decision. So it was our concern that if the entire cuff has to be inflatable, whatever that means, that potentially if there's an additional structure on the cuff that's not inflated like a flap, which does happen to be the case in some of these cuffs, or has a part of the just a single ply as opposed to having the chamber and or the inflatable protrusions, we didn't want to be told then later, are you stipulated to something that they actually infringed. So we made very clear in the stipulation, which was agreed to obviously by the defendants, that that was our concern about that construction, that it be entirely inflatable. Okay. So did I understand you right, that they do have both inflatable protrusions and an inflatable chamber within their cuff? Is that what you say the facts suggest? Yes, they do. They have these channels that connect all the different protrusions and those are inflatable chambers. And they are part and parcel of how this entire structure gets created in effect by its inflation and then left in the body in that state. Again, my concern simply was we did not want to stipulate, unless it was clear the stipulation was only because this phrase that had to be entirely inflatable or whatever the court used, the entire structure is inflated. We would not have stipulated otherwise to that term. Now, with respect to the valve itself... He didn't seem... I mean, I understand the argument you're making to me, but the district court, he didn't seem to understand that to be the argument. Because at appendix page 17, which is page 17 of his opinion, as well as footnote 9, he says you... He constantly characterizes your argument as an inflatable cuff, as an inflatable cuff, simply if it has inflatable protrusions. He doesn't seem to understand your argument. Well, I was concerned because he says here, the cuff is the entire structure, thus an entire structure is inflated. No, but then look... Come on. But then the entire structure is inflated because he has just said, you have said in the previous sentence that an inflatable cuff can have only inflatable protrusions. And then look in the text preceding the footnote where TriVascular argues that a cuff does, Dr. Samuels argues a cuff can have an inflatable chamber, but such is not required. It looks... I may be wrong, but it certainly looks to me like the arguments you made to this district court was that no inflatable chamber was required in an inflatable cuff under claim term one. He did argue that. That claim one... I'm understanding. I understand. That's... Correct. I don't understand you to have defended against summary judgment on the ground that there can be an inflatable chamber, but just the entire thing, every aspect of it doesn't have to have been inflated. That's not the... That's why I'm confused right now, because the argument you're making to me, it's not an unreasonable argument by any stretch. It just doesn't seem to parallel for me what I understood this case to have been about at the district court and what he found. Right. We had argued that claim one, by its very terms, does not have an inflatable chamber. Claim 14 and 23 did. So we were urging a construction that claim one did not require an additional inflatable chamber other than the protrusions. And he then... He then ruled that in the way he wrote the decision, that it did and made this comment that the entire structure had to be inflatable. We would not have stipulated to non-infringement because the device they have does have protrusions and chambers. So I have an abundance of caution. We made very clear in the stipulation, that's why we quoted and it's agreed to this quote right out of footnote nine, that we were stipulating because of that. So in any event, I just want to address the valve term. We just think the term was used very broadly. It's a generic term. The patent wasn't granted because of the valve. And here we now have the narrowest version of the valve possible because of this theory that somehow it has to work only in those... You are well into your rebuttal time. Okay. All right. Do you want to save any? Yes, I will save some. Thank you. Very good. Mr. Burgess? Good morning. And may it please the court, Bill Burgess for the appellees. Looks like Mr. Petruzzi got into all three issues in this case and I'd like to get into all of them. The first thing I'd like to talk about is the means. I think Judge Wallach asks, where is a disclosure in the patent where the cuff is inflated without the need for this valve? And I believe Mr. Petruzzi pointed to Appendix 60, Column 4, Lines 33 and 34. That's the paragraph that starts about halfway down the page referring back to Figure 1. And the point I'd make about that is that is not a separate embodiment. Figure 4 and Figures 4A and 4B show the same thing. If you look at the top of Column 3, it says, Figures 4A and 4B are enlarged, partially broken away perspective views showing the detail of the miter, I've heard it pronounced both ways, valve and breakaway valve connections of the stent of Figure 1 and engaged and disengaged positions respectively. So Figure 1 and Figures 4A and 4B are talking about the same thing. And so it necessarily means that the discussion of Figures 4A and 4B, which is right above that, is talking about the valve. And that's where the specification clearly links a valve to this function of inflating and deflating. This is a means plus function claim. This is not the sort of cases this Court sometimes sees where there's a dispute over whether this is a 112F claim. Everyone agrees. And so under 112F, the question is, what is the corresponding structure, material or acts described in the specification? The way this Courts of Williamson case put it, what did the patentee clearly link or structure? And so we look to the structure to see what structure, sorry, we look to the specification to see what structure Dr. Samuels clearly associated with this function. And in Column 4, Lines 8 through 10, we have the cuff is inflated and deflated by means of a valve. Outside of the claims and two general statements in the background, that is the only place the word means appears in the specification. And then the next, at Line 20, it says mating end separates opposing leaflets 51 and 53 so that cuff may be inflated or deflated. Now leaflets 51 and 53 are part of the valve. And that whole paragraph, let's say the second paragraph in Column 4 and the third paragraph in Column 4 describes a mechanism consisting of a syringe, a tubing and a valve that all work together to deliver inflation material into the cuff. I think Mr. Petruzzi was also talking about the valve and said that this, what he calls a breakaway valve, can't prevent, can seal by itself. There's nothing in the patent he pointed to that's attorney argument and just don't think it works that way. Everything in the patent that describes sealing specifically refers to a valve with leaflets or flaps or a movable part. One example I'd point the court to is Appendix 60, again this is the same paragraph I was just talking about. Column 4, Lines 29 and 32, where it says upon withdrawal of the mating end of inflation tubing as shown in Figure 3B, opposing leaflets 51 and 53 of the miter valve close to seal the inflated cuff 17. The leaflets of the valve close to seal the inflated cuff. That is the valve, the miter valve with the flaps that we're talking about that does the sealing. I think I should address Issue 3, I think some of the court's, the stipulation, to be clear and to be sure that we're not confusing or misleading the court. We have a disagreement about whether all three issues are independently sufficient. We both agree that if the court agrees with the district court's construction of the means, that's enough to resolve this appeal. We both agree that the valve is sufficient to resolve this appeal. The terms of the stipulation say that this inflatable and deflatable cuff issue only goes to Claim 1. Our argument, the logic is extremely simple. We think it follows from the logic of the stipulation that that necessarily also means that Claim 14 and Claim 23 aren't infringed because I think the questions brought out the whole dispute was whether the inflatable and deflatable cuff of Claim 1 also requires the chamber or not. Once the district court found that it does, if you look at the district court's construction in Appendix 16 and compare that to the actual text of Claims 14 and 23, the whole dispute is over whether there's an inflatable and deflatable chamber. We think it follows from the logic that that makes sense. Do you think the district court's construction requires an entirely inflatable chamber or just an in part inflatable chamber? I think it requires that the cuff be the same inflatable cuff as 14 and 23. To answer your question as directly as I can, this turns on how you read footnote 9 in the district court stipulation. Do any of your devices have a partially inflatable chamber? I don't want to speak to this because I'm not absolutely certain. I don't think they do. I don't think there's a chamber, for example, that goes like halfway around the cuff or anything like that. But I'm honestly not sure and it's not on the record and I don't want to speculate or say something wrong. In Mr. Petruzzi's argument, Dr. Samuel's argument that this inflatable and deflatable cuff might not necessarily also go to Claims 14 and 23, that turns on how you read footnote 9 of the district court's opinion. Now, that's an appendix 17 or sorry, the stipulation is appendix 27, which we're looking at and that cites appendix 17 footnote 9 of the district court's opinion. We think the better reading of that is that the district court is just once again rejecting this argument that if the protrusions are enough, the inflation of the protrusions make an inflatable cuff. Yes, exactly. Isn't that the only argument they made to the district court? I don't recall, though I may not have a perfect memory of this case, I don't recall them making the argument they make now, which is the accused device does have an inflatable chamber and inflatable protrusions and that that should preclude summary judgment. I thought throughout the entire briefing below and quite frankly in their blue brief on appeal to us, they were arguing that inflatable protrusions satisfy the inflatable cuff limitation. Yes, and that's my understanding too and I can cite the court to a few things for that. First of all, at appendix 17 footnote 9, the footnote that all this turns on, they cite a supplemental brief Dr. Samuels filed and that's at appendix 1450 where he's making this argument. And on that argument, again, he's arguing that trivascular is improperly trying to take the chamber of claims 14 and 23 and put it in claim one. Other places I'd cite the court to are page 44 of the blue brief, the bottom of, actually this page didn't make it into the appendix because no one cited it, but Samuels opening claim construction brief, it's docket number 81 in the district court at page 19 and also Samuels reply brief, reply claim construction brief in the district court which is docket number 84 at page 12 and neither of these last two things are in the appendix because they weren't discussed in the brief. And the last thing I'd cite the court for this is also at appendix 17, this is the page with the footnote on it, the district court describes this, whether the inflatable chamber is in claim one or not, as the crux of the dispute. So yes, I mean, this is what the parties were arguing about. And as the questions brought out, in claim one, in claim one separately recites an inflatable cuff and inflatable protrusions. More thing I'd point the court to is the diagram at page six of our red brief, that's figure one and figure two shown next to each other with some coloring in. I mean, that shows what's going on. Claim one doesn't recite the words inflatable and deflatable chamber, but it describes, it claims an inflatable and deflatable cuff and has an inner surface and outer surface. And claims figures one and two shown at page six of our red brief show what's going on there. If the court has any further questions, I'm happy to answer them about any claims otherwise. Thank you, Mr. Burgess. I just want to say, I think it is miter, although it could be both. But the reason I say that is because of miter boxes and the way they work. That's why it's called, I've always thought it was called a miter valve. Thank you. Mr. Petruzzi, we'll restore two minutes of rebuttal time. Sure. I just wanted to point out that one of the preferred embodiments of this invention is the use of a hardening fluid. And when using the hardening fluid, you inject the fluid, you wait until it hardens, and then you pull away at the breakaway valve. That's how it works. That's how the trivascular device is shown in the video that was submitted by defendants. And you can look at that video and see that there are a series of inflatable protrusions and there also are some inflatable chambers, some of which don't go all the way around, some which do. And it's been our view that claim one can be an inflatable cuff without having a separate chamber. You can have an inflatable cuff without it having its own chamber. Claim one doesn't recite that. Claims 14 and 23 did. Now with respect to this idea that the patent talks about something being by means of a valve and if that's somehow the way someone of ordinary skill would read this patent, I came to court by means for transporting a car. And I came by means of a street. That doesn't mean the street becomes part of the means for transporting. And in this case, the means for injecting are quite clear. They are just the syringe and the tube. It's connected to the cuff, obviously. But this whole patent is a structural claim and we don't believe that the separately recited valve, the one that's specifically identified in claims 9 and 19 as being separable from the means for injecting would be part of the means for injecting. Thank you. Okay. Thank you both counsel.